JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES WATERKEEPER, a
California non-profit association,

        Plaintiff,

    v.

ANHEUSER-BUSCH, LLC, a Missouri
Limited Liability Company; ANHEUSER-
BUSCH COMMERCIAL STRATEGY,
LLC, a Delaware Limited Liability
Company,

        Defendants.

Case No.: 2:24-cv-08226-RGK-SK

~~[PROPOSED]~~ **CONSENT DECREE**

///
///
///

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendants ANHEUSER-BUSCH, LLC, and ANHEUSER-BUSCH COMMERCIAL STRATEGY, LLC, ("Defendants") own and operate a facility at 15800 Roscoe Boulevard, Van Nuys, CA 91406, under Waste Discharger Identification number 4 19 I002616 ("Facility");

**WHEREAS,** the Facility's industrial activities consist primarily of brewing and manufacturing malt beverages, and the Facility is categorized under Standard Industrial Classification ("SIC") Code 2082, covering malt beverages;

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, Defendants' operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendants, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on July 16, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendants, their  registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on September 24, 2024, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:24−cv−08226−RGK−SK ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, including the Los Angeles River and downstream to Queensway Bay, San Pedro Bay, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendants (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**WHEREAS**, since receiving the 60-Day Notice Letter, Defendants have spent approximately $220,000 and anticipates further spending at least an additional $256,000 improve stormwater management at the Facility and implement this Consent Decree.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

**I.     OBJECTIVES**

5.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree,

compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

6.      In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

7.      Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

8.      Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

9.      Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.    DEFINITIONS

10.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules.

Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

  a. "BAT" means the Best Available Technology Economically Achievable.

  b. "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

  c. "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

  d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

  e. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

  f. "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in General Permit for Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based BMPs (General Permit § X.H.6.b.).

  g. "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

  h. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

  i. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

  j. "Forecasted Rain Event" means a forecasted rain event with fifty percent (50%) or greater chance of producing 0.1 inches over a

calendar day as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "North Hills, Los Angeles, CA, USA"[2].

k.   "MIP" means a Monitoring Implementation Plan.

l.   "PPT" means Pollution Prevention Team.

m.   "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.   "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.   "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.   "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.   "SWPPP" means a Storm Water Pollution Prevention Plan.

r.   "Term" means the period between the Effective Date and the "Termination Date."

s.   "Termination Date" means the latest of:

      i.   June 30 following five (5) years from the Effective Date;

      ii.   June 30 following two (2) years after all Advanced Treatment Systems (as defined below) are fully installed, operational, and optimized, if ever;

      iii.   seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in Paragraphs 10.s.i. and 10.s.ii. above; or

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=34.2356&lon=-118.4763.

iv.    seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree.

t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

11.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, if not identified and corrected pursuant to the Action Plan requirements described herein, shall be a violation of this Consent Decree.

12.    <u>Current and Additional Best Management Practices.</u> At all times, Defendants shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with: (1) BAT/BCT; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

13.    <u>Rain Gauge/Sensor.</u> Defendants currently have a rain gauge and continue to maintain it such that it is capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendants shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

14. <u>Structural and Non-Structural BMPs for the Facility</u>: Except as noted below, within forty-five (45) days of the Effective Date, Defendants shall develop and implement the following BMPs at the Facility:

      a.    Patch, pave, or otherwise resurface areas of significantly degraded pavement or asphalt throughout the Facility;

      b.    At the southeast corner of the Facility (east of the guard shack), install a trench drain across the driveway and along the property line to divert flows away from the driveway to Haskell Ave or demonstrate to Plaintiff's reasonable satisfaction that either alternative measures implemented will divert flow away from the driveway to Haskell Ave or that flow diversion is no longer necessary given alternative measures implemented by Defendants to reduce zinc concentrations in stormwater leaving the facility.

      c.    Install a drainage sump to collect the stormwater from the trench drain, and install a pump to convey the collected runoff to the south Dry Weather Flow Pump Back systems ("DWFPB") stormwater treatment system. Complete the berming of the reverse osmosis and carbon filtration areas to prevent non-stormwater from entering the stormwater collection system;

      d.    Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 $\mu$m) particles from all accessible paved areas at least once per month outside of the Wet Season, twice per month during the Wet Season, and use best efforts to conduct sweeping within twenty-four (24) hours prior to a Forecasted Rain Event. Employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

e.  Establish hand or small vacuum sweeping protocols to clean up deposits immediately for areas not accessible by the sweeper referenced in 15.d. and with the potential for particle deposition (e.g., the rail car grain unloading area);

f.  Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media) to remove sediments, metals, and organic materials in storm water discharged from the Facility, and configure such wattles/filters/socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendants shall, on September 15 following Effective Date and annually by each September 15 thereafter, employ and secure new wattles/filters/socks in the same manner annually prior to the start of the Wet Season;

g.  During each Wet Season, as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

h.  Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles/filters/socks deployed at the Facility;

i.  Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

9

j.    Routinely inspect the property to ensure no abandoned material is left exposed to stormwater during the Wet Season. Install permanent lids on all material and waste bins and dumpsters under Defendants' ownership or control, with protocols directing that the lids be closed at all times during Wet Season unless items are being added to or removed from them;

k.    Prior to each Forecasted Rain Event, place tarps over Defendants' bins and dumpsters that are without lids that are located outside of any structures.

l.    Institute an equipment and vehicle maintenance program that ensures:

    i.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

    ii.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

    iii.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

m.    Within ninety days from the Effective date, acquire all materials needed and complete the project to stop the equipment leak on the Power House roof and install filter boxes on Power House roof gutters to treat water runoff;

n.    No later than September 15th of each Reporting Year, and as necessary at the commencement of and during the Wet Season, inspect the two (2) Dry Weather Flow Pump Back (DWFPB)

systems to ensure that they are clear of debris, unclogged, and in proper, working condition and conduct cleaning as appropriate to ensure the systems remain in such condition;

o.  Within seven (7) days of each of the above BMPs being implemented, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

**B.    SAMPLING AT THE FACILITY**

15.    To the extent not already addressed in the existing Storm Water Pollution Prevention Plan, Defendants shall develop a monitoring program consistent with the General Permit. During the Term, Defendants shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events, including, at minimum, the first two (2) Qualifying Storm Events during in the first half of the Reporting Year and the first two (2) Qualifying Storm Events in during the second half of the Reporting Year). Defendants will use best efforts to capture samples in the first two Qualifying Storm Events in each half of the Reporting year.  Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If Defendants would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendants did not collect samples because such rain event did not produce a discharge, then Defendants shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred. Defendants shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within ten (10) days of a written request for such records by LA Waterkeeper.

16.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should

Defendants intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendants shall promptly notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

17.    Laboratory and Holding Time. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

18.    Detection Limit. Defendants shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

19.    Reporting. Defendants shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results.

C.    **REDUCTION OF POLLUTANTS IN DISCHARGES**

20.    Table 1 Numeric Limits. Defendants shall develop and implement additional BMPs for storm water discharges from the Facility to the extent required to meet Table 1 numeric limits.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Ammonia | 2.14 mg /L | NAL/ EPA Benchmark |
| BOD | 30 mg/L | NAL/ EPA Benchmark |
| Iron | 1.0 mg/L | NAL |
| N+N | 0.68 mg/L | NAL/ EPA Benchmark |
| Nitrate | 8.0 mg/L | NEL |
| Nitrite | 1.0 mg/L | NEL |
| O&G | 15 mg/L | NAL |
| pH | 6.5-8.5 S.U. | Basin Plan |
| Phosphorous | 2 mg/L | NAL/ EPA Benchmark |
| TSS | 100 mg/L | NAL/ EPA Benchmark |
| Zinc | 0.159 mg/L | NEL |

21.  <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from a given Discharge Point in a given Reporting Year exceeds any numeric limit contained in Table 1. An Exceedance shall constitute a violation of this Consent Decree.

22.  <u>Action Plan</u>. As of the Effective Date, and for the remainder of the Term, Defendants shall submit an Action Plan if any of the below "Trigger Events" occur:

    a.    If Defendants have an unauthorized non-storm water discharge in violation of Paragraph 11;

    b.    If storm water samples demonstrate an Exceedance as defined above;

    c.    If after an advanced treatment system is fully installed, operational, and optimized, if ever, Defendants receive a

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

13

laboratory report for storm water samples which demonstrates an Exceedance as defined above; or

d.    If after an advanced treatment system is fully installed, operational, and optimized, if ever, the advanced treatment system discharges untreated storm water in smaller than a Design Storm.

Defendants shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility, achieving compliance with the non-storm water discharge prohibition, and/or eliminating discharges in smaller than a Design Storm ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the applicable Trigger Event. However, an Action Plan shall not be required when the discharge from the Trigger Event is addressed in a previous Action Plan in the same Reporting Year and such BMPs are not yet implemented as of the date of the applicable unauthorized non-storm water discharge, discharge in smaller than a Designer Storm, or QSE sampling that led to the Exceedance.[4]

a.    Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum:

i.    the identification of the pollutant(s) discharged in excess of the numeric limit(s), the applicable unauthorized non-storm water discharge, and/or the applicable discharge in smaller than a Design Storm;

ii.    an assessment of the source of the applicable Trigger Event;

---

[4] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

iii.    the identification of additional BMPs (including the calculations and design plans, if relevant) that shall be implemented to achieve compliance with the numeric limit(s), unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs, and/or Design Storm standard; and

iv.    time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.    <u>Treatment System or Infiltration System</u>. Beginning in the 2027-2028 Reporting Year and for the remaining duration of the Term, the first Action Plan triggered as a result of an Exceedance at a given Discharge Point, shall include a plan for the implementation and operation of an advanced storm water treatment system ("Treatment System") for, at minimum, the applicable Discharge Point, as well as any other Discharge Point that Defendant elects to treat using the same Treatment System.

ii.    The proposed Treatment System shall either include pre-settling, polymer- or electronically-assisted coagulation,

15

CONSENT DECREE

followed by filtration, or Defendant may propose the use of an alternative treatment technology of equivalent effectiveness for pollutants listed in Table 1.[5]

    iii.  <u>Treatment System Design Standards</u>. The Treatment System shall be capable of treating industrial storm water runoff generated at the Facility by a Design Storm and reducing pollutant concentrations to achieve compliance with meet the Table 1 numeric limit(s), as well as the design plans and calculations of these additional BMPs.

  c.  <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

    i.  <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

    ii.  <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iii.  <u>Treatment Systems</u>. However, the first Installing additional components or systems, or otherwise improving, the advanced storm water treatment system or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

---

[5] Treatment systems may include Clear Water Services (https://www.clearwaterservices.com/).

        iv.    <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

    d.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete Action Plan to provide Defendants with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendants shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

    e.    Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 27.b.i below.

    f.    <u>Action Plan Payments</u>. Defendants shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd

Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

### D. VISUAL OBSERVATIONS

23. <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

24. <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct monthly non-storm water visual observations during the Facility's operating hours during when there is no rain and such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

25. <u>Visual Observations Records</u>. Defendants shall maintain observation records, including photographs, to document compliance with Paragraphs 23 and 24. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs

are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing. Defendants shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

26.     Employee Training Program. Within thirty (30) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a.     Materials. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendants' personnel to ensure effective implementation of all BMPs at the Facility;

b.     Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.     Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the

Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.    <u>Sampling Training</u>. Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.    <u>Visual Observation Training</u>. Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.    <u>Non-Storm Water Discharge Training</u>. Defendants shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.    <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.    <u>Records</u>. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

27.    <u>SWPPP Revisions</u>.

a.    <u>Initial SWPPP Revisions</u>. Defendants shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within forty-five (45) days of the Effective

Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

      i.      A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

      ii.      A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

      iii.      Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

      iv.      A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

      i.      A MIP as required by Sections XI and X.I of the General Permit;

      vi.      A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

      vii.      A Training Program as described above in Paragraph 26.

b.      <u>Additional SWPPP Revisions</u>.

    i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    ii.    Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendants shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    c.    <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to Paragraphs 27.a and 27.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete SWPPP to provide Defendants with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendants shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following

its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendants shall upload the revised SWPPP to SMARTS.

### E.   COMPLIANCE MONITORING AND REPORTING

28.   LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendants shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendants with at least forty-eight (48) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 56. During the Wet Weather inspection, Plaintiff may request that Defendants collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendants shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendants' representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

29.   <u>Document Provision</u>. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a.     Defendants shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board and the State Board., and/or the local Publicly Owned Treatment Works.

b.     Within three (3) business days of receipt by Defendants, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

30.    <u>Compliance Monitoring</u>. Defendants shall partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree during the Term by paying Five Thousand Dollars ($5,000.00) within thirty (30) days of the Entry Date.  In the event that, pursuant to Paragraph 28, there is an additional Site Inspection in a given year to resolve a dispute, Defendants shall reimburse LA Waterkeeper an additional Five Thousand Dollars ($5,000.00) during such year, within thirty (30) days after any additional Site Inspection. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o <u>Senior Attorney</u>, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.** **ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

31.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles River Watershed and waters tributary to the Los Angeles River, Defendants shall make a payment totaling Seventy Thousand Dollars ($70,000.00) to the Rose Foundation made within thirty (30) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

32.    <u>LA Waterkeeper's Fees and Costs</u>. Defendants shall pay a total of Eighty-One Thousand Five Hundred Dollars ($81,500.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group, and delivered by overnight carrier to 8 Rio Vista Ave.Oakland, CA 94611. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>Missed Deadlines</u>. In the event that Defendants fail to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendants shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 31. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendants agree to make the stipulated

payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

34.    Interest on Late Payments. Defendants shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendants are current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 31. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

35.    The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

36.    Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in

person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

37. <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 36, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

38. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

39. <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendants, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

40. <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

41. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an

informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

42.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

43.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

44.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

45.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

46.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

47. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

50. <u>Diligence</u>. Defendants shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

51. <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendants are complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

52. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

53. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

54. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent

Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

55.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

56.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| <u>If to Plaintiff</u>: | <u>If to Defendants</u>: |
|---|---|
| Los Angeles Waterkeeper | Jay P. Eversman |
| Barak Kamelgard | Associate General Counsel |
| Benjamin Harris | Anheuser Busch Companies |
| Erina Kwon | One Busch Place, 202-7 |
| Madeleine Siegel | St. Louis, MO 63118 |
| 360 E 2nd St., Suite 250 | (314) 765-4544 |

| | |
|---|---|
| Los Angeles, CA 90012<br>Email: ben@lawaterkeeper.org<br>Email: erina@lawaterkeeper.org<br>Email: madeleine@lawaterkeeper.org<br>Phone: (310) 394-6162 | jay.eversman@anheuser-busch.com |
| With copies to:<br>Aqua Terra Aeris Law Group<br>Jason R. Flanders<br>Kenya S. Rothstein<br>8 Rio Vista Ave.<br>Oakland, CA 94611<br>Email: jrf@atalawgroup.com<br>Email: ksr@atalawgroup.com | With copies to:<br>Allen Matkins Leck Gamble Mallory Natsis LLP<br>Attn: John J. Allen Matkins<br>865 South Figueroa Street – Suie 2800<br>Los Angeles, CA 90017 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

57.     If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

1    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

2  as of the date first set forth below.

3

4  APPROVED AS TO CONTENT

5

6

7  Dated: _____April 24_____, 2025          By: _____

8                                               Bruce Reznik

9                                               Executive Director

10                                              Los Angeles Waterkeeper

11

12  Dated: April 23, 2025          By: _____

13                                      James W. Mathis

14                                      Secretary

                                        Anheuser-Busch, LLC

15  Dated: April 23, 2025          By: _____

16                                      Eric Gutierrez

17                                      Senior General Manager

                                        Anheuser-Busch, LLC

18  Dated: April 23, 2025          By: _____

19                                      James W. Mathis

20                                      Secretary

                                        Anheuser-Busch

21                                      Commercial Strategy, LLC

22  Dated: April 23, 2025          By: _____

23                                      Eric Gutierrez

24                                      Senior General Manager

                                        Anheuser-Busch

25                                      Commercial Strategy, LLC

26

27

28

PROPOSED CONSENT DECREE

1    APPROVED AS TO FORM

2                                          Aqua Terra Aeris Law Group

3

4

5    Dated: ___April 24___, 2025    By: _____

6                                          Kenya S. Rothstein
                                          Attorney for Plaintiff
7                                          Los Angeles Waterkeeper

8                                          Allen Matkins Leck Gamble Mallory &
9                                          Natsis, LLP

10

11

12   Dated: ___April 24___, 2025    By: _____
13                                          John J. Allen
                                          Attorney for Defendants Anheuser-
14                                          Busch, LLC and Anheuser-Busch
                                          Commercial Strategy, LLC
15

16   **IT IS SO ORDERED.**
17   **FINAL JUDGMENT**

18
         Upon approval and entry of this Consent Decree by the Court, this Consent
19   Decree shall constitute a final judgment between the Plaintiff and Defendants.
20

21

22   Dated: ___6/12/2025_____    CENTRAL DISTRICT OF CALIFORNIA
23

24

25   _____
26   HONORABLE R. Gary Klausner
     United States District Court Judge
27

28